**CITY OF WATAUGA, Appellant,**

v.

**George TAYLOR and Barbara Taylor, Appellees.**

**No. 2–87–160–CV**

Court of Appeals of Texas, Fort Worth.

June 8, 1988.

Wynn, Brown, Mack, Renfro & Thompson, Douglas R. Hudman, Fort Worth, for appellant.

Susan M. Horton and Carl J. Shahady, Austin, for amici curiae Texas Municipal League and the Texas City Attorney's Ass'n, submitted in support of appellant.

Hill, Heard, O'Neal, Gilstrap & Goetz, Frank Gilstrap and Michael Rossetti, Arlington, for appellees.

Before FENDER, C.J., and FARRIS and LATTIMORE, JJ.

## OPINION

FENDER, Chief Justice.

George and Barbara Taylor, appellees, brought suit against the City of Watauga, Texas, appellant, for damages for injury to real and personal property resulting from the flooding of their home which is bordered by drainage ditches maintained by the City. The jury awarded appellees $3,000 for damages to their home, $6,800 for destruction of fixtures and personal property, and $19,500 for mental anguish. Attorneys' fees were set by the court at $15,000. Appellant appeals from this adverse verdict.

We affirm in part and reverse and render in part.

Appellees purchased their home in 1974. When they moved into the house a small drainage ditch bordered the entire north side of the lot. The ditch began above appellees' home in an undeveloped area to the east and emptied into a larger drainage facility immediately west of the lot. The east-west drainage ditch was located in a fifty-foot dedicated public drainage easement maintained by appellant.

Just to the east of appellees' property line was the Barrow bridge, a solid stone structure which crosses one of the drainage ditches immediately upstream from and adjacent to appellees' lot. The Barrow bridge contained five small culverts to allow water to pass.

In 1974 the Federal Insurance Administration notified appellant that it had designated several areas as "flood hazard areas" which would be theoretically inundated by water during a 100-year storm.[1] Appellees' home, along with property on both sides of the drainage ditch to the east, was located within one of these areas.

In April 1977 appellant considered a proposed plat for a new residential development, Phase I of the Sunnybrook Addition. As planned, and as ultimately built, Sunnybrook would cover 230 acres on both sides of the drainage ditch immediately upstream from appellees' home. Phase I would begin just above the Barrow bridge and would border appellees' property line. Phases II through V would be built further east. All 230 acres would drain into the drainage ditch just above the Barrow bridge.

In October 1981 an extremely strong rainstorm, approaching a 100-year storm, inundated Tarrant County and surrounding counties with more than 10 inches of rain in three days. Homes, including appellees', throughout Watauga, Texas, suffered extensive damage in that flood. In March 1985 Watauga experienced another heavy rainfall which caused erosion along one of the eastern drainage ditches adjacent to appellees' home. At the same time, cracks appeared in the walls, foundation, and floor of appellees' home where it bordered the drainage ditch.

Appellees filed this suit against appellant on June 8, 1983, alleging, among other things, that the development and construction of Sunnybrook Addition resulted in a substantial increase and diversion in the flow of surface water from the Sunnybrook Addition onto appellees' property. The case was submitted to the jury under the theory that appellant might be liable to appellees for alleged breaches of duty in four separate areas as follows:

A) The City's decision to approve the plats for the Sunnybrook Addition development;

B) The City's duty to construct drainage improvements downstream from the Sunnybrook Addition;

C) The City allowing the Barrow bridge to be constructed or to remain in place; and

D) The City's failure to maintain the drainage easement.[2]

Appellees sought to establish liability by seeking a finding that appellant's actions under any of these subsections were either intentional and unreasonable (special issue

---

1. A 100-year storm is a storm of such intensity that it has a one percent chance of occurring in any given year.

2. Each of these theories of duties appeared as labeled above as a subsection to special issues 1, 2, 3, 4, and 6.

1), negligent (special issue 2), or "willful, heedless and reckless disregard of or with conscious indifference to the rights of others" (special issue 6). The jury gave affirmative answers only to special issues 2 and 6.

On the basis of the jury's findings, the trial court rendered a judgment in favor of appellees awarding $3,000 for damages to appellees' home, $6,800 for destruction to appellees' personal property and fixtures, $19,500 for mental anguish, and $15,000 for attorneys' fees.

On appeal, appellant challenges the basis for each of the above awards with the exception of the $3,000 for property damages. Appellant agreed that the $3,000 for damages arising out of appellant's negligent maintenance of the drainage ditches, which in turn caused hairline cracks to walls and the garage floors of appellees' home in 1985, was supported by the evidence.

Appellant asserts in points of error one and two that the trial court erred in awarding mental anguish and personal property damages because appellant is immune from liability under the doctrine of governmental immunity, and appellees failed to prove any cause of action to support mental anguish damages.

The Texas Supreme Court has held that the approval of a plat is a governmental function and the subject of governmental immunity; thereby, a city cannot be held liable for negligently approving a plat. *City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex.1985). Therefore, we are left only to determine whether the two remaining disputed actions of appellant which form the basis of its liability, i.e., failing to cause drainage improvements downstream and allowing construction of the Barrow bridge or allowing it to remain in place, also fall within the purview of governmental immunity.

The basic rule is that the construction of sewers and drains is within the discretion of the governing body of the city so long as the city's action does not increase the flow of surface water across the land in question. *City of Dallas v. Winans*, 262 S.W.2d 256, 259 (Tex.Civ.App.— Dallas 1953, no writ); *City of Houston v. Bryan*, 2 Tex.Civ.App. 553, 22 S.W. 231 (1893, no writ); *compare City of Houston v. Hutcheson*, 39 Tex.Civ.App. 337, 81 S.W. 86 (1904, writ ref'd) (city liable for flooding where water diverted by paving street). Governmental immunity applies when a city exercises discretionary powers of a public nature embracing judicial or legislative functions. *Ellis v. City of West University Place*, 141 Tex. 608, 175 S.W.2d 396, 398–99 (1943). Judicial power refers to the power conferred upon a public officer to adjudicate the rights of individual citizens by construing and applying the law. *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909 (1942). The governing body of a city has the power to establish, erect, construct, regulate, and keep in repair, bridges, culverts, and sewers, and to regulate the construction and use of the same. TEX.REV.CIV.STAT.ANN. art. 1015(9) (Vernon Supp.1988). Thus, the planning and construction of drainage improvements is a quasi-judicial exercise of police power and a governmental function within the province of governmental immunity. Accordingly, appellees have no cause of action against appellant for *failure* to provide drainage improvements, subsection B of special issues 1, 2, 3, 4, and 6. However, had appellant itself negligently maintained or negligently constructed a storm sewer, appellant would be liable because the acts of constructing and maintaining a storm sewer would be ministerial acts which could be performed by a private subcontractor. *See City of Round Rock*, 687 S.W.2d at 303. *See also City of Houston v. Renault, Inc.*, 431 S.W.2d 322, 325 (Tex. 1968).

Insofar as appellant's point of error twelve challenges the legal and factual sufficiency of the evidence to support the jury finding that appellant negligently caused an invasion of water onto appellees' property by allowing the bridge to be constructed or to remain, subsection C of special issues 1, 2, 3, 4, and 6, we will address this point as it relates to point of error one.

In determining appellant's "no evidence" points, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). In contrast, we are required to consider all of the evidence in the case in determining appellant's "insufficient evidence" points. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

The Barrow bridge was in place at the time appellees purchased their property. After appellees moved in, they actually helped build a retaining wall as an addition to the bridge. The Barrow bridge could hold a flow of 380 cubic feet per second (CFS) of water. Prior to the Sunnybrook Addition development, the 230 acres of property where Sunnybrook is located would generate a flow of 250 CFS of water through the drainage ditch under a 100–year storm. Thus, the capacity of the bridge was adequate. There was no evidence introduced of a defective construction of the bridge. We find no evidence to support a finding of negligence in appellant initially constructing the bridge, subsection C of special issues 2 and 6.

■ The development of Sunnybrook did increase the flow of water through the drainage ditch under 100–year storm condition to 748 CFS. With Sunnybrook developed, the capacity of the Barrow bridge was inadequate. However, special issues 2 and 6 asked the jury to find whether appellant was negligent in allowing the bridge to remain. This is not the same as to seek a finding of appellant negligently maintaining a storm drainage ditch. The word maintaining is defined as "to keep in a state of repair." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1362 (1981). The record reflects no evidence that appellant failed to upkeep the Barrow bridge. The evidence only established that after the Sunnybrook development the Barrow bridge was not adequate to handle the increased flow of water. A city which undertakes to provide drainage has no duty to provide facilities adequate for all floods that may reasonably be anticipated. *Norman & Schaen, Inc. v. City of Dallas*, 536 S.W.2d 428, 430 (Tex.Civ.App. —Dallas 1976, writ ref'd n.r.e.). The issue of whether appellant was negligent in failing to remove the bridge is in actuality an issue of whether appellant was negligent in failing to provide sufficient drainage, an action subject to governmental immunity. As a result, the jury finding that appellant was merely negligent in allowing the Barrow bridge to remain will not support a ground of recovery for appellees, subsection C of special issues 2 and 6.

■ The remaining ground of recovery is based on appellant's failure to maintain the drainage easement, subsection D of special issues 2, 3, and 6. Appellant concedes that maintenance of the drainage ditch was a proprietary function and not the subject of governmental immunity, *see City of Round Rock*, 687 S.W.2d at 303; *City of Dallas v. Schultz*, 27 S.W. 292 (Tex.Civ.App.1894, no writ), and appellant admits that appellees are entitled to the $3,000 for property damage occurring in 1985 based on this ground. However, appellant argues that special issues 2D and 3D will not support a judgment for the $6,800 in personal damages which purportedly occurred prior to October 1985. Appellant claims that the only evidence about any failure to maintain the ditch pertained to the failure to prevent erosion along the sides of the drainage embankment in 1985. After reviewing all the evidence, we disagree with appellant's contention.

Barbara Taylor testified that appellant failed to regularly remove vegetation and debris from the ditch. Donald Canton, a civil engineer and a consultant for appellant, stated "a continuing program is necessary to maintain earthen channels [drainage ditches] to clear vegetation and debris, correct erosion." Testimony indicated maintenance problems with the drainage ditches existed as early as May of 1981. Additionally, Barbara Taylor testified that in May of 1981 the drainage ditch next to their home overflowed and the water entered their home and destroyed some per-

sonal property. Again, in October 1981 water inundated appellees' home and personal property damage occurred. Barbara Taylor's testimony further indicated while the Barrow bridge had five drainage culverts, vegetation and silt had closed off two of them, and appellant had failed to open them.

Findings of fact are in the exclusive province of the jury and/or the trial court. *See Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex.1986). We are unable to make findings of fact or to substitute our opinion for the findings of the jury. We conclude that the evidence supports the jury award of $6,800 for personal property damage under the theory of negligent maintenance of the drainage easement. Appellant's points of error one, two, and twelve are overruled.

■ Since we have determined appellees only have a cause of action based on appellant's failure to maintain the drainage ditch, we must next determine whether mental anguish and attorneys' fees were recoverable under this cause of action. Appellant's point of error eight challenges the legal and factual sufficiency of the evidence to support awarding mental anguish damages to George Taylor, and point of error nine challenges the mental anguish award to Barbara on the same grounds.

Barbara Taylor testified that the intensity of water flowing through the drainage ditch in the March 1985 flood was so intense that she feared a small child would be caught up and swept away. Barbara Taylor stated she was frustrated, angry, and helpless over the situation. She also conceded that physically she experienced stomach aches, headaches, and a loss of sleep. Barbara Taylor described the situation as follows: "you can't describe how it feels to be up at night because it's raining, you're up at 12:00, you're up at midnight, you're sweeping mud out of your garage and you try to get someone to come out and give you some help and relief and you can't get any and they [City] know what you're going through ... you feel like you can't leave your house any time it's raining...."

Turning to George Taylor's testimony, he indicated only that he felt bad for Barbara and himself and that the situation was very "disheartening" and "frustrating." This was the extent of George Taylor's testimony to establish mental anguish.

Proof of physical injury is no longer an element of the common law action for negligent infliction of mental anguish. *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 654 (Tex.1987). The Texas Supreme Court has defined mental anguish as "emotional pain, torment, and suffering." *Moore v. Lillebo*, 722 S.W.2d 683, 688 (Tex. 1986).

While the description and terms used by Barbara Taylor were not identical to the terms used in the supreme court's definition of mental anguish, we hold that the phrases used by Barbara Taylor to describe her damages were sufficient to establish mental anguish. *See Brown & Root, Inc. v. City of Cities Mun. Ut.*, 721 S.W.2d 881, 884 (Tex.App.—Houston [1st Dist.] 1986, no writ). On the other hand, based on George Taylor's testimony, the only evidence offered as to his mental anguish, we hold George Taylor has failed to raise the issue of mental anguish which would fall within the definition provided by the supreme court. Accordingly, George Taylor is denied recovery for mental anguish and appellant's point of error eight is sustained. However, point of error nine is overruled.

■ Appellant next contends the award for mental anguish is so excessive as to be manifestly unjust. The burden of establishing that damages are excessive is upon the complaining party. *Exxon Corp. v. Roberts*, 724 S.W.2d 863, 868 (Tex.App. —Texarkana 1986, writ ref'd n.r.e.). Further, the amount of an award for mental anguish and physical pain and suffering is largely left to the discretion of the jury. *Green v. Meadows*, 527 S.W.2d 496, 499 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *City of Houston v. Jean*, 517 S.W.2d 596, 602 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). We find no affirmative showing that the jury's award of $15,000 for mental anguish suffered by Barbara Taylor is so excessive as

to be manifestly unjust. Appellant's point of error ten is overruled.

Appellant's point of error eleven challenges the legal and factual sufficiency of the evidence to support an award of mental anguish based on a finding in special issue 6 of appellant's willful, heedless, and reckless disregard of, or conscious indifference to, the rights of others. It is unnecessary for us to address this point because the jury did not give an affirmative answer to subsection D, maintenance of the drainage ditch, which we have determined to be appellees' only possible cause of action. Thus, appellant's contentions in point of error eleven are moot.

Likewise, it is unnecessary to address appellant's point of error fifteen which argues the jury's findings in special issue 1 that certain conduct was not intentional and the jury's findings in special issue 6 that the same conduct was "willful, heedless and reckless disregard of or with conscious indifference to" were in conflict. On appellees' sole cause of action, i.e., maintenance of drainage ditches, the jury consistently answered both special issues in the negative.

We must next determine whether appellees are entitled to recover for attorneys' fees. Appellant's points of error three through seven contend that attorneys' fees are not awardable because (1) appellees' suit is based on negligence, (2) the suit is not a declaratory judgment suit, and (3) the suit does not constitute a 42 U.S.C. sec. 1988 (Supp.1988) or a 42 U.S.C. sec. 1983 (1986) action.

Appellees' cause of action sounds in tort. The only affirmative findings which appellees secured from the jury were based on negligence. Unless attorneys' fees are provided by statute or by contract, such fees are not recoverable in a tort action. *Bray v. Curtis*, 544 S.W.2d 816, 820 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r. e.).

Appellees' contention that they are entitled to recover attorneys' fees under the provisions of the Uniform Declaratory Judgments Act codified as TEX.CIV. PRAC. & REM.CODE ANN. secs. 37.002 and 37.009 (Vernon 1986) is without substance. A declaratory judgment suit is one which declares the rights and duties or the status of the parties. *Airport Coach Service, Inc. v. City of Fort Worth*, 518 S.W. 2d 566, 571 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.). The main purpose of the declaratory judgment statute was to create a speedy and effective means for the determination of the rights of the parties when a controversy had arisen, even before any wrong had been actually committed. *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713–14 (1945). Declaratory relief is inappropriate where the only issue involved is a question of fact. *Emmco Insurance Co. v. Burrows*, 419 S.W.2d 665, 671 (Tex. Civ.App.—Tyler 1967, no writ).

This is clearly not a declaratory judgment case. This is a suit for damages arising out of alleged negligence and an alleged unconstitutional taking, both questions of facts. Appellees take the position that this is an action for declaratory judgment because they seek a declaration that appellant is liable to appellees for damages. In every action for damages, plaintiffs seek a declaration that such damages are due and owing, and defendants seek a declaration that damages are not due and owing. If appellees' position were taken, then every action for damages would be a declaratory judgment. Appellees' argument for recovery of attorneys' fees under the Declaratory Judgment Act must fail.

Appellees next claim they are entitled to recover attorneys' fees under the Federal Civil Rights Statutes, 42 U.S.C. secs. 1983 and 1988. Parties who prevail under 42 U.S.C. sec. 1983 are entitled to recover attorneys' fees under 42 U.S.C. sec. 1988. *City of Arlington v. Byrd*, 713 S.W.2d 224, 228 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3213, 96 L.Ed.2d 700 (1987). The gravamen of appellees' claim is that appellant deprived them of their private property without just compensation.

There must be more than mere negligence to recover for due process violation under 42 U.S.C. sec. 1983. *Griffin v. Hilke*, 804 F.2d 1052, 1055 (8th Cir.1986).

The Fifth Circuit has held allegations that a city negligently designed and constructed a drainage system, causing water and sewage to be deposited on private property, did not raise an ordinary tort by a government agent to the stature of constitutional violations. *York v. City of Cedartown*, 648 F.2d 231 (5th Cir.1981). In that case, the private property owners were denied relief under 42 U.S.C. sec. 1983. *Id.* at 232. Furthermore, Texas courts have held negligently destroying property is not a taking of property. *Steele v. City of Houston*, 603 S.W.2d 786, 791–92 (Tex.1980); *Texas Highway Department v. Weber*, 147 Tex. 628, 219 S.W.2d 70, 72 (1949); *City of Abilene v. Smithwick*, 721 S.W.2d 949, 951 (Tex.App.—Eastland 1986, writ ref'd n.r.e.). Appellant's points of error three through seven are sustained, and appellees are denied recovery for attorneys' fees.

Appellant's final two points of error assert the trial court erred in awarding prejudgment interest because there was no pleading to support the award, and appellees' motion for leave to file a trial amendment requesting prejudgment interest was not timely. We disagree.

Prejudgment interest is recoverable in a tort claim action without evidentiary proof at trial concerning the prejudgment interest, so long as it is supported by the pleadings. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551–56 (Tex.1985). The verdict in this case was returned in December of 1986. Various post-verdict motions and briefs were filed and heard over the next several months. In May, appellees moved for leave to file a trial amendment requesting recovery of prejudgment interest. The court granted the motion and appellees' trial amendment was filed, all prior to the rendition of the judgment. We find that it was within the trial court's discretion to permit appellees to file a post-verdict trial amendment praying for prejudgment interest. *See Benavidez v. Isles Const. Co.*, 726 S.W.2d 23, 25–26 (Tex.1987). Points of error thirteen and fourteen are overruled.

The trial court's judgment is affirmed in part and reversed and rendered in part.

The trial court's judgment as to the award of mental anguish damages to George Taylor is reversed, and we render that George Taylor receives no award for mental anguish. The trial court's judgment as to the award of attorneys' fees is also reversed, and we render that appellees receive no award for attorneys' fees. The remainder of the trial court's judgment is affirmed.