City of Cleburne v. Davenport 






NO. 10-90-030-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

Â Â Â Â Â Â Â Â Â Â CITY OF CLEBURNE,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â Â Â JAMES DAVENPORT, ET AL,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees

* * * * * * * * * * * * *

 From 249th Judicial District Court
Johnson County, Texas
Trial Court # 249-174-85
* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Â Â Â Â Â Â Â Â Â Â This is a suit for property damage and mental anguish brought by Plaintiff-Appellees James
Davenport and his wife and their three children against the Defendant-Appellant City of Cleburne,
in which the Davenports claim the City was negligent in failing to clean out a creek bed near the
Davenport property. The City contended, among other things, that its actions were subject to the
doctrine of governmental immunity.
Â Â Â Â Â Â Â Â Â Â Trial was to a jury which found the City negligent in failing to do what an ordinary city
would have done in connection with the work they undertook to do on the creek. The jury failed
to find that the Davenports suffered any property damage as a result of the City's negligence;
however, the jury did award damages for mental anguish to the Davenports. More specifically,
the jury awarded for mental anguish $5,000.00 each to Mr. and Mrs. Davenport plus $2,500.00
each to the three children.
Â Â Â Â Â Â Â Â Â Â The Davenport property upon which is situated their home place and rent house is located
near the north city limits of the City of Cleburne. West Buffalo Creek flows from north to south,
and enters the City at the north city limits and flows all the way southward wherein it joins East
Buffalo Creek just north of the south city limits. The Davenport property is located within the
City limits a short distance south of the north city limits, and near West Buffalo Creek. This suit
arose as a result of flooding which occurred when West Buffalo Creek overflowed its banks during
heavy rains that occurred in the spring of 1985. Plaintiffs' property was located in a flood plain
and the Davenports knew this within a short time after they purchased this property in 1977,
because they were required to secure flood insurance. A piece of property that adjoined the
Davenport property was contiguous to and was a part of West Buffalo Creek, the ownership of
which piece of property was unknown to the Davenports. Significantly, the evidence shows that
the land over which West Buffalo Creek flows is all privately owned, and that none of same is
owned by the City of Cleburne.
Â Â Â Â Â Â Â Â Â Â In 1979 a flood occurred which caused waters to rise to four feet inside the Davenport
home, after which time the Davenports always knew their land would flood if there was enough
rain. After the 1979 flood, the City cleaned out most of the west fork of Buffalo Creek. The
cleaning operation was originally intended to go from city limit to city limit, but because the land
along and under the creek channel was privately owned, the City had to obtain each landowner's
permission in order to fulfill that intent. In fact, some landowners refused permission to the City
to enter upon their property, resulting in the City stopping the cleanout project about four blocks
south of the Davenport property. Witnesses testifying in behalf of the City testified that the City
had no duty to clean out the creek that was on private property, and that the City could not clean
out debris without the permission of the landowners. Such testimony was further to the effect that
the only recourse the City could have taken once they were refused admittance by such property
owners would have been to condemn the property and take easements. Proof showed the City
Council considered that action and decided not to take that action.
Â Â Â Â Â Â Â Â Â Â In May 1985 another flood occurred which is the one the Davenports complain damaged
their property; however, the waters that rose in 1985 did not go into their house as they had in
1979. The Davenport home never flooded after 1979.
Â Â Â Â Â Â Â Â Â Â Perry Harts, the City Engineer, testified that cleaning the creek bed downstream from the
Davenports allowed the water adjacent to the Davenport property to get out quicker and not back
up on their property. Moreover, he testified that if the City had skipped over the objecting
landowners' property and cleaned further north it would have created a dam on the uncleared
property and would have caused the water to back up even worse onto the Davenport property.
Â Â Â Â Â Â Â Â Â Â Appellant City's first point of error asserts the trial court erred in entering judgment in
favor of the Davenports because (the City contends) the City is immune from liability under the
doctrine of governmental immunity. The City's second point of error argues that there was no
evidence that the City owed a duty to the Plaintiffs. For the reasons hereinafter stated, we sustain
these two points of error, and thereby reverse the trial court's judgment and render judgment that
the Plaintiff-Appellees take nothing.
Â Â Â Â Â Â Â Â Â Â The Davenports do not contend that the City failed to act to provide or construct drainage
improvements, but they argue that once the City undertook to make drainage improvements on
Buffalo Creek, the City had a duty to not perform such construction or maintenance in a negligent
manner. Former City Manager, Lloyd Moss, testified that it was originally the City's intention
to clean out the creek from city limit to city limit. The City actually did clean out the creek bed
from the south city limits northward up to about four blocks south of the Davenport property,
where these cleaning-out efforts ceased because of the refusal of property owners of the creek bed
to allow the City and its equipment to enter upon their property. In other words, the Davenports
are saying the City is not negligent in failure to provide drainage facilities, but once the City
undertook to clean out the creek they became under a duty to do so in a non-negligent fashion, and
if the City cleaned out the creek in a negligent fashion, then the City is liable. There was evidence
that neighbors close to the Davenports dumped dirt and other debris into the creek. In summary,
Plaintiffs say that the City failed to maintain the creek after debris had been dumped in the creek,
and the City was negligent in failing to clean the creek as it had originally intended.
Â Â Â Â Â Â Â Â Â Â The planning and construction of drainage improvements is a quasi-judicial exercise of
police power and a governmental function within the province of governmental immunity. City
of Watauga v. Taylor (Fort Worth CA 1988) 752 S.W.2d 199, no writ. A city which undertakes
to provide drainage has no duty to provide facilities adequate for all floods that may reasonably
be anticipated. Id. In this connection, the Dallas Court of Appeals in Norman & Schaen Inc., v.
City of Dallas (Dallas CA 1976) 536 S.W.2d 428, NRE, at page 430 has this to say:
"Since partial protection against floods is better than none at all, if the city
undertakes to provide drainage, it has no duty to provide facilities adequate for all
floods that may be reasonably anticipated. The existence of such liability would
tend to deter the city from providing even partial relief from flooding. The extent
of the protection to be provided is within the discretion of the governing body,
which must weigh the needs of the entire community and allocate available
resources so as best to serve the interest of all its citizens. To award damages in
a private action for insufficient drainage of a particular tract of land would be to
permit use of the judicial process to supervise the planning and construction of
public improvements. Municipal fiscal policy, instead of being set for the city as
a whole by the elected representatives of the people, would be subject to piecemeal
review and revision by courts in separate actions concerned primarily with the
interests of one or more individual landowners and their lessees. (citations)"

We are of the opinion and hold that the City's decision concerning how to or whether to take steps
to prevent or minimize flooding along West Buffalo Creek is a discretionary governmental
function for which the City should be afforded governmental immunity.
Â Â Â Â Â Â Â Â Â Â Moreover, there is an additional reason why the City's governmental immunity should
apply. Mr. Lloyd Moss, the former City Manager, testified that the cleanout project on West
Buffalo Creek was originally intended to go from city limit to city limit if the City obtained
permission from the landowners who owned the creek bed; however, this intent was thwarted
because some private citizens along the creek bed would not permit the City to come upon their
respective properties for the purpose of cleaning out the creek. Mr. Moss testified that once the
City was refused permission by a landowner to enter upon and clean the creek, the only alternative
the City had was to condemn the person's property where access was refused and for the City to
acquire an easement. He further testified that the City Council considered this alternative and
rejected it.
Â Â Â Â Â Â Â Â Â Â Â The decision on the part of the City to exercise or not exercise their right of eminent
domain is a legislative power and not a judicial power. Stirman v. City of Tyler (Tyler CA 1964)
443 S.W.2d 354, 358, NRE. In this connection our Supreme Court in Lewis v. City of Fort
Worth (Tex. 1936) 89 S.W.2d 975 at page 978, has this to say:
" . . . . It is also elementary that in instances where the law visits upon a
governing body the duty to exercise its sound judgment and discretion, courts have
no right to interfere so long as such body acts lawfully. In other words, a court has
no right to substitute its judgment and discretion for the judgment and discretion
of the governing body upon whom the law visits the primary power and duty to act. 
Of course, if such governing body acts illegally, unreasonably, or arbitrarily, a
court of competent jurisdiction may so adjudge, but there the power of the court
ends. (citation)."

Â Â Â Â Â Â Â Â Â Â Applying the reasoning of the above authorities to the case at bar, we hold that the City
of Cleburne's exercise of its discretion to not condemn the property of the landowners along
Buffalo Creek was a governmental function of the City and is subject to the doctrine of
governmental immunity.
Â Â Â Â Â Â Â Â Â Â By Appellant's tenth and final point of error it is asserted that the trial court abused its
discretion in granting the Davenports' Motion for Sanctions and imposing a sanction of $2,000
against the City because (the City says) the Appellant City did not violate the Texas Rules of Civil
Procedure.
Â Â Â Â Â Â Â Â Â Â Prior to trial, the time and place of the deposition of Mr. Charlie Perkins was arranged by
agreement. Counsel for the City desired to take the depositions of Messrs. Barney Ballard and
W. D. Doggett at the same time and place that Mr. Perkins' deposition was scheduled to be taken. 
Mr. Wilson, counsel for the Davenports, would not agree that the depositions of Ballard and
Doggett be taken at the time of the Perkins deposition. The City's attorneys sent notices of the
Ballard and Doggett depositions by fax to a number provided by Mr. Wilson's office. The
depositions of Ballard and Doggett were taken at the time and place specified by the fax notice.
Â Â Â Â Â Â Â Â Â Â Mr. Wilson denied ever receiving written notice of the Ballard and Doggett depositions;
however, he did actually know that the depositions were being taken and he, in fact, personally
appeared at such depositions for a brief time, but he refused to take part in such depositions and
left before they were taken. No motion to quash the depositions was ever filed. However, Mr.
Wilson did file a motion for sanctions and requested that the City be precluded from using the
Ballard and Doggett depositions and further requested monetary sanctions against the City.
Â Â Â Â Â Â Â Â Â Â The trial court conducted a hearing (prior to trial on the merits) on this motion after which
the court granted the motion. More specifically, the trial court did not strike the City's pleadings;
however, he struck the Ballard and Doggett depositions and imposed sanctions in the amount of
$2,000.00 against the City, requiring the City to pay the $2,000.00 at Mr. Wilson's office on or
before 5:00 P.M. the following day. The trial court further announced that if the $2,000.00 was
not paid as ordered, then the court would strike the City's pleadings and grant default judgment
against the City.
Â Â Â Â Â Â Â Â Â Â The trial court stated that he granted the Davenport motion for sanctions because he
believed that the City had not complied with the Texas Rules of Civil Procedure when the City's
counsel faxed the notices to the Davenports' attorney. The court stated that Rule 21(a) of the
Rules of Civil Procedure authorized service of a notice by personal delivery or by certified or
registered mail. The trial court further stated that Rule 200 (concerning notice required for oral
depositions) did not state any exception from the requirements of Rule 21(a) when providing notice
of a deposition. In other words, the court reasoned that when the City failed to serve the notice
on the Davenports' attorney by personal delivery or by certified or registered mail, that the City
failed to comply with the Rules of Civil Procedure. This is the reason given by the trial court for
granting the Davenports' motion for sanctions, resulting in suppression of the Ballard and Doggett
depositions and the assessment of a $2,000.00 sanction to be paid by the City.
Â Â Â Â Â Â Â Â Â Â The question before us is whether the trial court abused its discretion in granting the
Davenport motion for sanctions. We are of the opinion and hold that the trial court did abuse its
discretion in this regard.
Â Â Â Â Â Â Â Â Â Â Although the Davenports' attorney was not served with a notice by personal delivery or
by registered or certified mail, yet said attorney had actual knowledge of the time and place of
such depositions, and was actually present when such depositions were about to be taken. The
City's testimony showed that Mr. Wilson had been served by a fax message, whereas Mr. Wilson
denied that he ever received such message. At any rate, Mr. Wilson had actual knowledge of the
depositions, and was there.
Â Â Â Â Â Â Â Â Â Â The City has not shown that it was harmed by not being able to use the two depositions in
question; therefore we believe the trial court's order barring such depositions should stand;
however, we hold that the trial court abused its discretion in assessing the $2,000.00 sanctions
paid by the City; therefore, this part of the trial court's order is set aside.
Â Â Â Â Â Â Â Â Â Â For the reasons hereinabove stated, we reverse the trial court's judgment and render
judgment that Plaintiff-Appellees take nothing, and set aside that portion of the trial court's order
assessing the $2,000.00 sanctions payment made by the City.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â JOHN A. JAMES, JR.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice (Retired)

Before Chief Justice Thomas, Justice
Â Â Â Â Â Â Â Â Â Â Hall (Retired) and Justice 
Â Â Â Â Â Â Â Â Â Â James (Retired)
Reversed and Rendered
Opinion delivered and filed February 14, 1991
Do not publish



n>

   Because the videotape was admitted
without limitation, even though the parties agreed on the record that some of
the matters depicted therein were inadmissible, Vaccaro is estopped to complain
about the admission of the videotape in evidence.Â  See Willover v. State,
70 S.W.3d 841, 846 (Tex. Crim. App. 2002).Â  And because the videotape was
admitted without limitation, Vaccaro is estopped to complain that the jury
reviewed the entirety of the videotape.

Â Â Â Â Â Â Â Â Â  In Willover, the defendant
sought to introduce a videotape in evidence for impeachment purposes, but the
trial court refused to admit the evidence because portions of it were
inadmissible and the court had no means to edit the inadmissible portions.Â  See
id.Â  The Court of Criminal Appeals held that the trial court did not abuse
its discretion by excluding the evidence because the defendant failed to
segregate and offer only the admissible portions.Â  Id. at 846-47. Â As
the Court explained:

The trial court need never sort through
challenged evidence in order to segregate the admissible from the excludable,
nor is the trial court required to admit only the former part or exclude only
the latter part.Â  If evidence is offered and challenged which contains some of
each, the trial court may safely admit it all or exclude it all, and the losing
party, no matter who he is, will be made to suffer on appeal the consequences
of his insufficiently specific offer or objection.

Â 

Id.
at 847 (quoting Jones v. State, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992)).

Â Â Â Â Â Â Â Â Â  VaccaroÂs case presents a procedural
scenario opposite that presented in Willover, yet with the same result.Â 
Vaccaro offered a videotape containing admissible and inadmissible matters
rather than offering a redacted version of the videotape.Â  The court admitted
the evidence without limitation, and Vaccaro did not request a limiting
instruction when the evidence was admitted.Â  Cf. Hammock v. State, 46
S.W.3d 889, 894 (Tex. Crim. App. 2001) (ÂIf a limiting instruction is to be
given, it must be given when the evidence is admitted to be effective.Â).Â  ÂIf
evidence is offered and challenged which contains [admissible and inadmissible
evidence], the trial court may safely admit it all or exclude it all,
and the losing party, no matter who he is, will be made to suffer on appeal the
consequences.ÂÂ  Willover, 70 S.W.3d at 847 (quoting Jones, 843
S.W.2d at 492).

Â Â Â Â Â Â Â Â Â  Thus, we overrule VaccaroÂs fifth
issue.

Notice of Deadly-Weapon Issue

Â Â Â Â Â Â Â Â Â  Vaccaro contends in his sixth issue
that his right to due process was violated when the court submitted a
deadly-weapon question in the charge because the State did not give adequate
notice of its intent to seek a deadly-weapon finding.

Â Â Â Â Â Â Â Â Â  A defendant has a right to notice of
the StateÂs intent to seek a deadly-weapon finding.Â  Ex parte Huskins,
176 S.W.3d 818, 820 (Tex. Crim. App. 2005).Â  This right is Âfirmly rooted in
fundamental precepts of due process and due course of law.ÂÂ  Villescas v.
State, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006) (quoting Ex parte
Patterson, 740 S.W.2d 766, 774 n.7 (Tex. Crim. App. 1987)).

Â Â Â Â Â Â Â Â Â  Here, the indictment presented by the
grand jury did not contain a deadly-weapon allegation.Â  The State filed a
motion to amend the indictment to include a deadly-weapon allegation and to add
enhancement allegations on September 7, 2004.Â  The court heard the StateÂs
motion in a pretrial hearing on September 29.Â  Vaccaro objected to only the
proposed enhancement allegations.Â  The court granted the StateÂs motion to
amend, although the court did not interlineate the proposed amendments at that
time.Â  Voir dire was conducted on October 15, and the trial on the merits
started three days later.

Â Â Â Â Â Â Â Â Â  Vaccaro had at least two weeksÂ notice
of the StateÂs intent to seek a deadly weapon finding.Â  Thus, his right to due
process was not violated by the timing of the StateÂs notice.Â  See Williams
v. State, 172 S.W.3d 730, 737 (Tex. App.ÂFort Worth 2005, pet. refÂd) (8
daysÂ notice of intent to enhance punishment adequate); Richardson v. State,
170 S.W.3d 855, 857 (Tex. App.ÂTexarkana 2005, pet. refÂd) (11 daysÂ notice
adequate); Hackett v. State, 160 S.W.3d 588, 591 (Tex. App.ÂWaco 2005,
pet. refÂd) (minimum of 10 daysÂ notice required for enhancement allegations), disavowed
sub silentio by Villescas, 189 S.W.3d at 294.[2]Â 
Accordingly, we overrule VaccaroÂs sixth issue.

Ineffective Assistance

Â Â Â Â Â Â Â Â Â  Vaccaro contends in his seventh issue
that he received ineffective assistance of counsel.Â  We begin with a Âstrong
presumptionÂ that counsel provided reasonably professional assistance, and Vaccaro
bears the burden of overcoming this presumption.Â  See Andrews v. State,
159 S.W.3d 98, 101 (Tex. Crim. App. 2005).Â  Generally, the appellate record is
insufficient to satisfy this burden.Â  Scheanette v. State, 144 S.W.3d
503, 510 (Tex. Crim. App. 2004).Â  If nothing in the record reveals the reason
for the act or omission which is the basis of an ineffective assistance
complaint, we may not speculate on that reason.Â  See Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Jones v. State, 170 S.W.3d
772, 775 (Tex. App.ÂWaco 2005, pet. refÂd); Hajjar v. State, 176 S.W.3d
554, 567 (Tex. App.ÂHouston [1st Dist.] 2004, pet. refÂd).

Â Â Â Â Â Â Â Â Â  Vaccaro did not raise this issue in a
motion for new trial.Â  Without a record elucidating the reasons for counselÂs acts
and omissions, Vaccaro has failed to overcome the Âstrong presumptionÂ that
counsel provided reasonably professional assistance.Â  See Andrews, 159
S.W.3d at 101; Jones, 170 S.W.3d at 776-77; Hajjar, 176 S.W.3d at
567.Â  Thus, we overrule VaccaroÂs seventh issue.

We affirm the judgment.

Â 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring)

Affirmed

Opinion delivered and
filed May 2, 2007

Do not publish

[CRPM]









[1]
Â Â Â Â Â Â Â Â Â  The first two issues (legal and
factual sufficiency) are presented in an appellantÂs brief filed by counsel
whom Vaccaro retained about six months after trial and who represented Vaccaro
for about four months.Â  The remaining five issues are presented in a pro se
appellantÂs brief Vaccaro filed during a period of about one year when he was
not represented by counsel.Â  After that, Vaccaro retained other counsel who
filed a supplemental brief providing additional argument and authority with
regard to the videotape issue.Â  The State has filed briefs in response to each
of the briefs filed on VaccaroÂs behalf.Â  We have renumbered the issues
presented in VaccaroÂs pro se brief to supplement the issues presented
in the brief filed by his former counsel.





[2]
Â Â Â Â Â Â Â Â Â  In Hackett, a majority of
this Court held that a defendant is entitled to a minimum of ten daysÂ notice
of the StateÂs intent to seek enhancement-of-punishment findings.Â  Hackett
v. State, 160 S.W.3d 588, 591 (Tex. App.ÂWaco 2005, pet. refÂd).Â  In Villescas,
the Court of Criminal Appeals Âdisavow[ed] the [El Paso] courtÂs attachment of
special significance to the time period of ten days.ÂÂ  Villescas v. State,
189 S.W.3d 290, 294 (Tex. Crim. App. 2006).Â  Thus, less than ten daysÂ notice
may be sufficient depending on the circumstances of the case.