**CITY OF FORT WORTH,**
**Texas, Appellant,**

v.

**Lucille ADAMS, Individually, and as**
**Next Friend for Leon Adams, a**
**Minor Child, Appellee.**

No. 2–92–238–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 2, 1994.

Rehearing Overruled Jan. 10, 1994.

Wade Adkins, City Atty., Terry Vernon, Asst. City Atty., Fort Worth, for appellant.

Wallace Brady, Wallace Brady & Associates, Fort Worth, for appellee.

Before FARRIS, LATTIMORE and WEAVER, JJ.

## OPINION

LATTIMORE, Justice.

The City of Fort Worth appeals an adverse judgment rendered in this wrongful death case in favor of Lucille Adams, individually and as next friend for Leon Adams, a minor child, raising eight points of error. Fort Worth contends the trial court erred: (1) in overruling its pretrial plea in abatement and plea to the jurisdiction by declaring chapter 101 of the Texas Civil Practice and Remedies Code (the Texas Tort Claims Act) [1] inapplicable and proceeding to trial under common-law negligence; (2) in overruling its pretrial plea in abatement and plea to the jurisdiction by not dismissing the Adamses' claims based on their failure to timely present notice of their claim under the Tort Claims Act; (3) in overruling Fort Worth's motion for judgment n.o.v. because the Tort Claims Act precludes liability in a "premise defect" case as a matter of law; (4) in overruling Fort Worth's motion for judgment n.o.v. because the evidence is insufficient to support liability as a "special defect" case under section 101.022(b) of the Tort Claims Act; (5) in overruling Fort Worth's motion for judgment n.o.v. because there was no evidence or insufficient evidence to support the jury's finding that Fort Worth's acts or omissions were a proximate cause of the accident; (6) in overruling Fort Worth's motion for new trial requesting that the case be retried under the Tort Claims Act; (7) in awarding attorney fees because there is no statutory authority to permit such an award as a separate element of recovery or as an award over the statutory limitation of liability of the Tort Claims Act; and (8) in overruling Fort Worth's motion to reform the judgment so that the total amount of recovery by the Adamses conforms to the statutory maximum limit prescribed by section 101.023.

We hold that this case should have been tried under the Tort Claims Act and reverse and remand it for a new trial.

## I. *Factual and Procedural Background*

On the afternoon of May 24, 1986, Cecilia Adams and her youngest son, Michael, drowned after Ms. Adams had driven her car into flood waters that had accumulated where Long Avenue goes under a railroad underpass in Fort Worth, Texas. The area was temporarily flooded by a sudden and heavy

---

1. All statutory references in this opinion are to the Texas Tort Claims Act, codified at Tex.Civ. Prac. & Rem.Code Ann. §§ 101.001–101.109 (Vernon 1986 & Supp.1994).

thunderstorm. Ms. Adams' oldest son, Leon, was also in the car and was the only one of the three who managed to swim to safety and survive.

Lucille Adams is Cecilia's mother, the grandmother of both of the boys, and Leon's guardian. The Adamses submitted a formal notice of claim to Fort Worth on November 23, 1987, stating the claim was being made under the Tort Claims Act. They subsequently filed their original petition on January 26, 1988. Fort Worth then filed a plea in abatement, plea to the jurisdiction, and special exceptions with its answer, affirmatively pleading the defense of governmental immunity and limited liability under the Tort Claims Act. The trial court overruled Fort Worth's pleas and ordered the case to trial according to the "law that was in effect on the date of the accident." A statement of facts from the hearing is not in the record to explain exactly what the trial court meant by this statement.

The Adamses then filed an amended petition that set forth the following negligence allegations:

a. Defendant City failed to warn the deceased, Cecilia Faye Adams, and other motorists similarly situated, that the roadway at the place where her death occurred, and other low-lying, depressed areas through the City, were dangerous when water stood in the roadway ...;

b. The City failed to post any kind of depth indicator in the low place where the flooding occurred, or other low-lying areas subject to flooding throughout the City ...;

c. Defendant City failed to barricade the roadway after the flood so as to prevent the decased [sic], or other motorists similarly situated, from driving into the flooded area;

d. Defendant City failed to provide an adequate drainage system to properly drain the water where the accident occurred and to prevent the dangerous flood-

ing which took the life of Cecilia Faye Adams and her youngest child.

The Adamses also alleged that the Tort Claims Act did not apply and that the negligent acts and omissions of Fort Worth were proprietary functions. The Adamses alternatively pleaded for the first time that the flood waters on the road constituted an obstruction, and, therefore, were a "special defect" within the language of section 101.022(b) if the trial court ruled the Tort Claims Act applied.

The case was tried and the jury returned a verdict in favor of the Adamses, assigning 40% negligence to Cecilia Adams and 60% negligence to Fort Worth.[2] The jury then found actual damages of $605,000, and the trial court, after apparently reducing the damage award for Cecilia Adams' comparative negligence, entered judgment against Fort Worth for $593,000 plus prejudgment interest.

## II. Governmental Immunity and Liability

Before addressing Fort Worth's points of error, a summary of the law relating to governmental immunity and liability is in order.

### A. Common law

■ Under common law, governmental units, including cities, are immune from liability for governmental acts unless the legislature statutorily waives immunity. *City of Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex.1985); *Turvey v. City of Houston*, 602 S.W.2d 517, 519 (Tex.1980). However, cities are not immune under common law from liability for proprietary acts. *Turvey*, 602 S.W.2d at 519 (maintenance of streets, including duty to warn of defect in streets, is proprietary, and city has same duties and liabilities as private entities); *see also Jezek v. City of Midland*, 605 S.W.2d 544, 546 (Tex.1980) (city liable for negligent performance of proprietary function of maintaining streets in safe condition); *Dilley v. City of Houston*, 148 Tex. 191, 222 S.W.2d 992, 995

---

**2.** The jury first answered affirmatively that Fort Worth knew, or in the exercise of ordinary care, should have known, that the place where the accident occurred was subject to flooding during

or immediately after heavy rain. The jury then found in response to a general negligence question that Fort Worth and Cecilia Adams were both negligent.

(1949) (construction and maintenance of storm drainage sewer is proprietary and city could be liable for negligence in child's drowning death).

Two more recent examples of the unavailability of governmental immunity to cities for proprietary acts under common law are *City of San Antonio v. Hamilton*, 714 S.W.2d 372, 374–75 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (city's design and construction of water crossing where decedent was killed in flash flood were proprietary because city assumed doing it for benefit of citizens and locality, and tort claims act in effect then did not apply to plaintiffs' negligence claim because city's acts were proprietary and common-law liability attached to city) and *City of Tyler v. Fowler Furniture Co.*, 831 S.W.2d 399, 401–02 (Tex.App.—Tyler 1992, writ denied) (business, after being flooded following heavy rain, sued city on grounds city negligently maintained or repaired storm drainage system and failed to provide or maintain adequate barriers around system, and court found failure to provide barriers was proprietary, so city not immune).

■ On the other hand, a city is immune and is not liable when it performs a discretionary act that only a governmental unit could perform. *City of Round Rock*, 687 S.W.2d at 302 (court held approval of subdivision plat was governmental act and city was immune where homeowners sued city under common law for property damage after homes flooded due to allegedly negligent approval of subdivision plat). Another example of immunity for governmental acts is *City of Watauga v. Taylor*, 752 S.W.2d 199 (Tex. App.—Fort Worth 1988, no writ), where homeowners sued the city under common law for flooding damage to property caused after heavy rains, alleging negligent approval of plats, negligent failure to provide drainage improvements, negligently allowing a bridge to be constructed or to remain in place, and negligently failing to maintain a drainage easement. This court held that the claims based on negligent approval of plats and

negligent failure to provide drainage improvements, which essentially were the planning and construction of drainage improvements, were governmental, therefore the city was immune.[3] *Id.* at 202. The court noted, however, that had the city itself negligently maintained or negligently constructed a storm sewer, it could be liable because such acts are proprietary. *Id.* Finally, on the claim that the city negligently failed to maintain the drainage easement, the city agreed that this was a proprietary act that it could be liable for. *Id.* at 203–04.

## B. *The Tort Claims Act*

■ The legislature has waived governmental immunity in the Tort Claims Act, chapter 101 of the Civil Practice and Remedies Code, and its predecessor statutes. § 101.025. Under the Tort Claims Act, a governmental unit, including a city, is liable for personal injuries and deaths proximately caused by a condition or use of personal or real property if the governmental unit would, were it a private person, be liable. § 101.021(2).

■ The Tort Claims Act, however, does not apply to claims based on an act or omission that occurred before January 1, 1970. § 101.061. For such claims, common law determines the existence and extent of governmental immunity and liability.

■ Section 101.0215, added by the legislature in 1987, specifically concerns municipal liability under the Tort Claims Act. A city is liable for damages arising from its governmental functions, which include those functions enumerated in subsection 101.0215(a), including street construction and design, bridge construction and maintenance and street maintenance, sanitary and storm sewers, warning signals, engineering functions, maintenance of traffic signals, signs, and hazards. § 101.0215(a)(3), (4), (9), (20), (30). However, the Tort Claims Act does not apply to a city for damages arising out of its pro-

---

3. On the claim that the city negligently allowed the bridge to be constructed or to remain in place, the court found there was no evidence of defective construction of the bridge, so the city could not be liable, but in any event, the failure to remove the bridge was actually a failure to provide sufficient drainage, and because the planning and construction of drainage improvements is governmental, the city would be immune. *Id.* at 202–03.

prietary functions, § 101.0215(b), which do *not* include those functions listed as governmental in subsection (a). § 101.0215(c). Thus, in situations where the Tort Claims Act does not apply, a city can still be liable under the common law for negligently performing proprietary functions.

■ The Tort Claims Act does not apply (*i.e.*, the government has not waived immunity) when a governmental unit exercises its discretionary powers.[4] Specifically, the Tort Claims Act does not apply:

(1) to a claim based on the failure of a city to perform an act that the city is not required by law to perform; or

(2) if the law leaves the performance or nonperformance of an act to the city's discretion, to a claim

  (a) the city's decision not to perform an act, or

  (b) the city's failure to make a decision on the performance or nonperformance of the act.

§ 101.056.

An example of the application of section 101.056 is *Mitchell v. City of Dallas*, 855 S.W.2d 741 (Tex.App.—Dallas 1993), *aff'd on other grounds*, 870 S.W.2d 21 (Tex.1994), a suit under the Tort Claims Act against a city after a child was injured in a bike accident in a creek at a city park. The plaintiffs alleged negligence in the construction and maintenance of the creek wall, in the failure to warn of the creek wall, and in the failure to construct a barrier around the creek wall area. The court, applying section 101.056, recognized that design decisions by a city are discretionary and the city is immune, but that maintenance activities are operational and the city is not immune. *Id.* at 745. The court, noting a conflict among the courts of appeals on this issue, held that construction activities are not discretionary because they involve implementation of policy decisions at an operational level.[5] *Id.* The court then

held that the city was immune from liability for any claims involving the design of the creek wall. *Id.* at 750.

■ Another area where the Tort Claims Act does not apply is traffic and road control devices. The Tort Claims Act does not apply to a claim arising from: (1) the failure of a governmental unit to place a traffic or road sign, signal, or warning device if the failure is the result of a governmental unit's discretionary action; (2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the governmental unit within a reasonable time after notice; or (3) removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct it within a reasonable time after actual notice. § 101.060(a). This section, however, does not apply to the duty to warn of special defects. § 101.060(c). In a case involving a special defect, the Tort Claims Act, specifically § 101.022(b), applies and there is no governmental immunity.

■ Section 101.022 prescribes the duties owed by a governmental unit for defects under the Tort Claims Act. In a premise defect case, the city owes the duty owed a licensee. § 101.022(a); *State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex.1992). A licensee must prove that (1) a condition of the premises created an unreasonable risk of harm; (2) the city actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the city failed to exercise ordinary care to protect the licensee from danger; and (5) the city's failure to exercise ordinary care was a proximate cause of the injury. *Payne*, 838 S.W.2d at 237.

■ In a special defect case, the city owes the duty owed an invitee. § 101.022(b); *Kitchen*, 867 S.W.2d at 786; *Payne*, 838

---

4. Whether a governmental unit's act is discretionary is a question of law. *Wenzel v. City of New Braunfels*, 852 S.W.2d 97, 99 (Tex.App.—Austin 1993, no writ); *McKinney v. City of Gainesville*, 814 S.W.2d 862, 867 (Tex.App.—Fort Worth 1991, no writ).

5. *See also McKinney*, 814 S.W.2d at 866; *Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 433 (Tex.App.—Fort Worth 1989, writ denied).

S.W.2d at 237. An invitee must prove that (1) a condition of the premises created an unreasonable risk of harm; (2) the city knew or reasonably should have known of the condition (contrasted with the requirement that a licensor must have actual knowledge of the condition); (3) the city failed to exercise ordinary care to protect the licensee from danger; and (4) the city's failure to exercise ordinary care was a proximate cause of the injury. *Payne*, 838 S.W.2d at 237. That the invitee knew or should have known of the condition would be irrelevant. *Id.* at 239.

Special defects are excavations, obstructions, or other conditions that present an unexpected and unusual danger to ordinary users of roadways. *Kitchen*, 867 S.W.2d at 786 (icy bridge was premise defect, not special defect, because it is entirely predictable and not unexpected or unusual when there is precipitation accompanied by near-freezing temperatures); *Payne*, 838 S.W.2d at 238; *Crossland*, 781 S.W.2d at 433 (lake water level under bridge not special defect); *see also State Dep't. of Highways & Pub. Transp. v. Zachary*, 824 S.W.2d 813, 818–19 (Tex.App.—Beaumont 1992, writ denied) (evidence sufficient to support jury finding that puddle of water on highway caused by "dam" created by repair of crack that prevented drainage was obstruction and thus special defect); *Miranda v. State*, 591 S.W.2d 568 (Tex.Civ.App.—El Paso 1979, no writ) (under old tort claims act, two feet of water on state highway was obstruction and thus special defect).

■ Whether a particular condition is a premise defect or a special defect is a question of law. *Kitchen*, 867 S.W.2d at 786; *Payne*, 838 S.W.2d at 238.

### III. *Application of the Law*

■ Points of error one and six are addressed together because they dispose of whether the trial court should have applied the Tort Claims Act to this case. Under the 1987 amendments to the Tort Claims Act, all suits filed on or after the effective date of September 2, 1987 are subject to the amended version of the Tort Claims Act. Texas Tort Claims Act, 70th Leg., 1st C.S., ch. 2, § 4.05, 1987 Tex.Gen. Laws 37, 51. In addi-

tion, the legislature provided a 120–day window in which claims could be pursued under the previous version of the Tort Claims Act. *Id.*

Because the Adamses filed this suit on January 26, 1988, after the effective date of the 1987 amendment and the close of the 120–day window, the amended version of the Tort Claims Act applies to this case, contrary to the trial court's ruling. The trial court's error resulted in this case being tried under the wrong law and wrong theories. We sustain points of error one and six. The interest of justice requires us to reverse and remand the entire case for a new trial under the Tort Claims Act. *See United Gas Corp. v. Shepherd Laundries Co.*, 144 Tex. 164, 189 S.W.2d 485, 492 (1945); *W. & W. Oil Co. v. Capps*, 784 S.W.2d 536, 538 (Tex.App.—Tyler 1990, no writ); *see also* Tex.R.App.P. 81(c).

In its third point of error, Fort Worth contends that it cannot be liable to the Adamses for premise defect under section 101.022(a) as a matter of law and that it was entitled to judgment n.o.v. because of the application of section 101.061 to this case. Section 101.061 states: "This chapter does not apply to a claim based on an act or omission that occurred before January 1, 1970." § 101.061. The significance of this section is not apparent until the Adamses' negligence allegations are analyzed in light of relevant case law.

This court in *Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 430 (Tex.App.—Fort Worth 1989, writ denied) addressed whether certain governmental entities could be liable under the Tort Claims Act for the deaths of two men who struck their heads on the bottom of a bridge over a reservoir when they crossed under the bridge in a boat during the night. The plaintiffs alleged the State had failed to provide lights and warnings on the bridge. They argued on appeal that the acts or omissions complained of occurred on the night of the accident because that is when the State breached its duty; *i.e.*, the State could have warned of the danger sometime after 1970.

This court refused to interpret section 101.061 in that manner and pointed out that

the plaintiffs had not alleged any act or omission by the government that occurred after 1970. *Id.* at 432. The State was not liable under the Tort Claims Act for any design defect of the bridge or reservoir because the bridge and reservoir were designed before 1970. *Id.* The rationale was that the act or omission, the defective design, was one that occurred before 1970; thus the Tort Claims Act did not apply. *Id.* Moreover, the lights, signs, and safety features were part of the design. *Id.* Thus, the State could not be liable based on a failure to include lights, signs, and safety features in the original pre–1970 design. *Id.; see also Barron v. Texas Dept. of Transp.,* 880 S.W.2d 300 (Tex.App.—Waco 1994, writ requested) (State could not be liable under Tort Claims Act for accident on bridge where bridge was built in 1920's and upgraded around 1950); *Burnett v. Texas Highway Dept.,* 694 S.W.2d 210, 211–12 (Tex.App.—Eastland 1985, writ ref'd n.r.e.) (State could not be liable under Tort Claims Act for injuries sustained by passengers and driver of car hit when truck crossed highway metal beam guard fence because highway had been designed and constructed by 1961).

■ On the Adamses' causes of action based on failure to provide an adequate drainage system and failure to post any kind of depth indicator, the Tort Claims Act does not apply because these were acts or omissions that arose at the time of the design and construction of the road, which was indisputably before 1970. These causes of action should thus be tried under common law.[6] *See Crossland,* 781 S.W.2d at 432.

■ On the causes of action for failure to place barricades and failure to warn, those are acts and omissions that arose on the date of the accident. The failure to place a barricade could not logically be an act or omission that occurred at any other time other than on the occasion of the flooding. Likewise, the failure to warn of water on the street that may have posed some danger to motorists would not arise until the day of the flooding as well. The failure to place barricades and

failure to warn are now classified under the amended version of the Tort Claims Act as governmental functions that a municipality may be liable for. § 101.0215(a)(20). These allegations must be tried under the Tort Claims Act.

Fort Worth's third point of error is sustained in part (the Tort Claims Act applies to the allegations regarding failure to warn and failure to place barricades on the occurrence in question) and overruled in part (the allegations for failure to provide an adequate drainage system and failure to install a depth indicator must be tried under common law because they are excepted from the Tort Claims Act by section 101.061).

We reverse and remand this cause for a new trial in accordance with the law set forth in this opinion. Accordingly, we need not address the remaining points.

instructive on these claims on remand.

---

**6.** The section of this opinion concerning governmental immunity for discretionary acts will be