Steven **DALON** and Judith
Dalon, Appellants,

v.

**CITY OF DeSOTO**, Texas, Appellee.

No. 05–91–01548–CV.

Court of Appeals of Texas,
Dallas.

Sept. 15, 1992.

Rehearing Denied Dec. 18, 1992.

Susan Barilich, Dallas, for appellants.

R. Wayne Gordon, Robert G. Hogue, Carlos A. Balido, Dallas, for appellee.

Before ENOCH, C.J., and BISSETT[1] and CARVER[2], JJ.

## OPINION

BISSETT, Justice (Retired).

Steven Dalon and Judith Dalon, plaintiffs in the trial court (hereinafter "appellants"), appeal from an order granting summary judgment against them and in favor of the City of DeSoto, Texas (hereinafter "appellee"). We affirm.

## PLEADINGS

This suit arises from alleged water erosion of appellants' property located at 724 Arbor Creek Drive, DeSoto, Texas. Appellants filed suit against appellee on December 13, 1990, alleging negligence, inverse condemnation, and violations of the Texas Water Code resulting in damage to and loss of their real property. Appellee filed a general denial and further asserted that the damages were caused by appellants' acts and omissions, which constituted negligence, proximately causing the alleged damages. Appellee also pleaded that it was entitled to governmental immunity and subject only to limited liability under the Texas Tort Claims Act, that appellants' cause of action was barred by limitations, and that appellants failed to give timely and actual written notice of their claims within the time required by its charter and the Texas Tort Claims Act.

Appellee filed a motion for summary judgment on July 16, 1991, alleging that appellants as a matter law of were not entitled to a recovery of damages due to its asserted defenses. Appellants filed a response to the motion on August 2, 1991. Both parties rely on summary judgment evidence consisting of affidavits, depositions, exhibits, admissions, and certified copies of public records. Summary judgment was rendered in favor of appellee on September 18, 1991.

1. The Honorable Gerald T. Bissett, Justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi, Retired, sitting by assignment.

## FACTS

Appellee owns a drainage easement that crosses the rear of appellants' residential property. The easement is unimproved and covers a steep vertical drop of about thirty feet from the back of appellants' yard to the bed of Heath Creek, which bounds their property. Heath Creek is a natural creek classified by appellee as a storm sewer. Natural rainfall and water flowing along Heath Creek caused erosion of which appellants first became aware in 1986.

On July 18, 1989, appellants appeared before appellee's city council verbally expressing concern about the flooding along Heath Creek and claiming that they lost half their yard from erosion. On September 26, 1990, appellants' attorney notified the mayor in writing of the property damage to appellants' property caused by erosion.

Deposition testimony of Steven Dalon was attached to appellee's motion for summary judgment and to appellants' response. Dalon testified that he first noticed minimal erosion in 1986, that erosion caused by rains had continued since then, and that substantial erosion occurred in May 1989 after heavy rains. He further testified that appellee channelled water into the creeks by routing storm sewers into Heath Creek when it should have built other storm sewers "to channel the water off instead of dumping it into creeks." He also said that the rising waters of Heath Creek never overflowed its natural banks at any place but noted that the erosion had "widened" the creek.

Appellee's director of public works, Gordon Mayer, Jr., provided deposition testimony that was attached to appellee's motion for summary judgment. Mayer testified that the area experienced major flooding because of the unusually heavy rains in 1989 and 1990, that such flooding was considered "a fifty year event," and that the additional water in the creek "would imply additional erosion" of the banks. He fur-

2. The Honorable Spencer Carver, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

ther testified that erosion is a natural occurrence, "the magnitude of it will depend on rainfall and flow," and that the erosion of appellants' property "is just the result of certain unusual rainfall activity."

By affidavit attached to appellants' response, Gary Pettit, a registered professional engineer, stated that by observation, he estimated that about ten feet of appellants' backyard had been lost to erosion caused by "flood waters." Pettit explained that the "easement area has not been properly maintained or repaired with slope protection, a retaining wall or other erosion protection measures to hold the land in place." Pettit further stated: "It is not normal erosion however, which has caused the loss of 10 feet of the Dalon's backyard, but rather, the extreme, rapid erosion which was first observed in May, 1989."

Additional evidence was presented that residential upstream development caused added rainfall water to drain into Heath Creek, contributing to appellants' problems.

## CONTENTIONS OF THE PARTIES

Appellants present eight points of error. In summary, they contend that the trial court erred in granting summary judgment against them on their claim of negligence since appellee failed to prove any defense that bars their claims as a matter of law and that material issues of fact exist that preclude the granting of summary judgment.

Appellee responds that it is not liable for the claims asserted by appellants because: (1) appellants' negligence claim is barred by the two-year statute of limitations; (2) appellants failed to give timely and adequate notice of their claim as provided by its charter and the Texas Tort Claims Act; (3) appellants' claim of negligence is barred as a matter of law by the doctrine of governmental immunity under the Texas Tort Claims Act; (4) appellants' inverse condemnation claim under article I, section 17 of the Texas Constitution is barred as a matter of law since there is not a taking of, or damage to, their real property for public use; and (5) appellants' claim under the

Texas Water Code is barred as a matter of law. Appellee further contends that there are no genuine issues as to any material facts and that it is entitled to summary judgment as a matter of law.

## THE LIMITATIONS QUESTION

■ The water erosion to appellants' property constitutes a permanent injury to land as defined by Texas courts. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex. 1984); *Gulf Coast Sailboats, Inc. v. McGuire*, 616 S.W.2d 385, 387 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). The determination of whether injury to land is permanent depends on whether the injury is constant and continuous. *Bayouth*, 671 S.W.2d at 867.

Appellants argue that their negligence claim is not barred by the statute of limitations since their cause of action did not accrue until May 1989. Appellants admit that the erosion to their property began in 1986 and is continuous. This erosion is due to natural rainfall and the water flow along Heath Creek abutting appellants' property.

■ Appellants' property damage claim is governed by the two-year statute of limitations. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986). It is undisputed that appellants first experienced and discovered water erosion to the rear of their property in 1986 and that they did not file suit until December 13, 1990, well outside of the limitations period. In his argument, appellant cites to a case that holds that the statute of limitations begins to run upon discovery of the first actionable injury and not on the date when the extent of the damages to the land are ascertainable. *Bayouth*, 671 S.W.2d at 868. However, appellants attempt to distinguish between minimal injury to their property and substantial injury to their property. None of the cases cited by appellants make such a distinction; instead, these cases refer only to an "injury."

The injuries suffered by appellants in 1986 caused a loss to their property. Appellants were aware of this loss and could have sought relief. Therefore, the erosion,

which began in 1986 and was discovered by appellants in 1986, was an actionable injury for permanent damages, which suit should have been filed within two years of its discovery. Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986); *Bayouth,* 671 S.W.2d at 868. Suit was not filed within that time period. Therefore, appellants' negligence claim is barred by the statute of limitations.

## THE TIMELINESS AND ADEQUACY OF NOTICE

Assuming for the sake of argument that suit was not barred by the two-year statute of limitations, there are other reasons why suit was barred. It is undisputed that appellants gave verbal notice of their claims to appellee's city council on July 18, 1989, when they appeared in person before the council. It also is undisputed that appellants gave formal notice of their claims to the mayor by letter dated September 26, 1990, signed by their attorney. The letter describes the injury as follows:

> Their home and the lot on which it is built have been affected by very serious erosion problems due to the failure of the City of DeSoto to properly channel the water drainage in the area and the concommitant [sic] failure of the City to properly maintain and repair the floodway easement which traverses the back of the Dalon's property.

> What is happening is that an excessive volume of water has apparently been channeled by the City into Heath Creek such that every time the creek rises or flooding occurs a portion of the Dalon's back year [sic] is literally washed away. At this point in time, there are only several feet between the back of the Dalon's house and the creek bank. Not only have they lost the use of their back yard as a result of this problem, but the remaining soil in the bank has become unstable and extremely expensive corrective measures need to be taken to stabilize it, some of which would require repair work to adjacent properties as well. Needless to say, this has also had a direct impact on the value of their home

and has greatly impeded their efforts to sell it.

Appellee argues that appellants have failed to comply with the requirements of article XII, section 6 of DeSoto's city charter and the notice requirements contained in section 101.101(a), (b) of the Texas Civil Practice and Remedies Code. *See* Tex.Civ. Prac. & Rem.Code Ann. § 101.101(a), (b) (Vernon 1986).

Appellants complain that the city charter was not properly before the trial court and, therefore, that this Court cannot consider the provisions of the charter. Prior to the trial court's rendition of summary judgment, appellee forwarded a letter to the trial court's attention on September 6, 1991, asking the court to take judicial notice of the appellee's charter requirements concerning notice of a claim. It has been held that courts may take judicial notice of city charters. *Greenway Parks Owners Ass'n v. City of Dallas,* 159 Tex. 46, 57, 316 S.W.2d 74, 74 (1958); *City of Wichita Falls v. Streetman,* 607 S.W.2d 644, 647 (Tex.Civ.App.—Fort Worth 1980, no writ); 35 Tex.Jur.3d *Evidence* § 49, at 86 (1984). Article XII, section 6 of the charter provides:

> The City of Desoto shall not be held responsible on account of any claim for damages to any person unless the person making such complaint or claiming such damages shall, within ninety (90) days after the time at which it is claimed such damages were inflicted upon such person, file with the City Secretary, a true statement under oath, as to the nature and character of such damages or injuries, the extent of the same, and the place where same happened, the circumstances under which same happened, the conditions causing same, with a detailed statement of each item of damages and the amount thereof, and if it be for personal injuries, giving a list of the witnesses, if any known to affiants, who witnessed such accident.

The Texas Tort Claims Act requires that notice of a claim be filed no later than six months after the date of the incident giving rise to the claimed occurrence. Tex.Civ.

PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 1986).

Appellants' first written notice of claim to appellee was on September 26, 1990. This formal written notice of claim was filed more than ninety days from the date the erosion began in 1986 and more than six months from the date when the erosion began as required by the Texas Tort Claims Act. Appellants argue that the applicable period from which to base the notice-of-claim requirement is May 1989. Even assuming such argument to be true, the September 26, 1990 letter still fails to meet the ninety-day city charter requirement and the six-month Texas Tort Claims Act requirement for filing a notice of claim.

Appellants also argue that appellee was provided with actual notice of the injuries to their property. They rely on their personal appearance before the DeSoto city council on July 18, 1989.

■ Texas courts have construed "actual notice" to mean that knowledge that the governmental unit would have had if the claimant had complied with the formal notice requirement. *Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 632 (Tex.App.—Corpus Christi 1988, writ denied). Appellee must receive information reasonably describing the injuries and the time, manner, and place of the incident from which they arose. *Id.* at 633; *Collier v. City of Texas City*, 598 S.W.2d 356, 358 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). Appellants' appearance before the city council only indicates their concern with flooding along Heath Creek due to the loss of half their yard from erosion. Such an appearance by appellants does not meet the standards set forth in the city charter notice-of-claim requirements or the notice-of-claim requirements contained in the Texas Tort Claims Act. Appellants, in their appearance before the city council, failed to apprise appellee of its possible culpability as required by the Texas Tort Claims Act notice-of-claim provisions. *Bourne,* 749 S.W.2d at 633. Therefore, appellants' appearance before the city council does not constitute actual notice under the Texas Tort Claims Act.

■ Appellants argue further that their claims are not governed by the Texas Tort Claims Act and, therefore, that the notice provisions contained in section 101.101 of the Texas Civil Practice and Remedies Code do not apply to their situation. Appellants also argue that the city charter notice provisions only apply to personal injury and not to property damage claims. We do not agree. The city charter notice provision states that it applies to "damages," which necessarily covers injuries to both persons and property.

■ Since the provision relied upon by appellee in its notice-of-claim defense is contained in the city charter and not in the city ordinance, the trial court was within its discretion to take judicial notice of the city charter provision and to apply its requirements to the case at bar. Therefore, the city charter provisions concerning the notice-of-claim requirements were properly before the trial court.

We hold that since appellants failed to meet the notice-of-claim requirements under both the city charter and the Texas Tort Claims Act, their claims are barred as a matter of law.

### THE GOVERNMENTAL IMMUNITY ISSUE

■ Appellants complain in their pleadings that the damages sued for and the injury to their backyard was caused by appellee's failure to maintain or repair the storm sewer and by its approval of upstream residential development allegedly increasing the flow of water in Heath Creek. When analyzing a cause of action brought under the Texas Tort Claims Act against a municipality, the initial determination to be made is whether the municipality's action or omission involves a proprietary function or a governmental function. *McKinney v. City of Gainesville,* 814 S.W.2d 862, 865 (Tex.App.—Fort Worth 1991, no writ). If the city's action constitutes a governmental function, the city is liable only for property damage if it "arises from the operation or use of a motor-driven vehicle or motor-driven equipment." TEX.

CIV.PRAC. & REM.CODE ANN. § 101.021(1)(A) (Vernon 1986); *McKinney,* 814 S.W.2d at 865; John T. Montford & Will G. Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System,* 25 HOUS.L.REV. 59, 121 (1988) (hereinafter Montford & Barber). Texas courts have consistently upheld the proposition that a municipality "does not waive sovereign immunity as to *property damage* unless the damage is caused by the negligent act or omission of a state employee *and* arises from the operation of motor driven equipment." *Department of Highways & Pub. Transp. v. Pruitt,* 770 S.W.2d 638, 639 (Tex.App.—Houston [14th Dist.] 1989, no writ) (emphasis in original); *see City of Hearne v. Williams,* 715 S.W.2d 375, 377 (Tex.App.—Waco 1986, writ ref'd n.r.e.); *Callaway v. City of Odessa,* 602 S.W.2d 330, 333 (Tex.Civ. App.—El Paso 1980, no writ); *De Anda v. El Paso County,* 581 S.W.2d 795, 796–97 (Tex.Civ.App.—El Paso 1979, no writ).

■■■ Appellants argue that appellee's negligence revolves around its failure to properly maintain the Heath Creek storm sewer. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(a)(9) (Vernon Supp.1992) (governmental function involves storm sewers). The Texas legislature took the initiative to statutorily list those municipal activities that fall within a municipality's governmental functions in section 101.0215(a) and those activities that fall within a municipality's proprietary functions in section 101.-0215(b). Neither list is inclusive. *McKinney,* 814 S.W.2d at 865. It is clear that the legislature, by enacting this portion of the Texas Tort Claims Act in 1987, reclassified as governmental many municipal activities formerly considered by Texas courts to be proprietary. Montford & Barber, *supra,* at 121. Storm sewers, which are now classified as governmental functions under section 101.0215(a), were formerly classified as proprietary functions under Texas common law. *City of Watauga v. Taylor,* 752 S.W.2d 199, 202 (Tex.App.—Fort Worth 1988, no writ); Montford & Barber, *supra,* at 123.

■■■ Appellants, in their response to appellee's motion for summary judgment, presented the trial court with the "Paving and Drainage of the Subdivision Ordinance Section 10 of the City of DeSoto" and referred to this ordinance in their summary judgment evidence when speaking of the drainage easement along Heath Creek abutting their property. The ordinance relied upon by appellants refers to the natural creek behind appellants' property as a "storm sewer." Appellants argue that the floodway easement abutting their property is a proprietary function and claim that section 101.0215(a) of the Texas Civil Practice and Remedies Code does not address the drainage or floodway channel involved in this case. However, it is clear that appellee classified the natural creek abutting appellants' property as a storm sewer. Appellants themselves presented a certified copy of the ordinance to the trial court and relied on the "storm sewer" classification in their response to appellee's motion for summary judgment.

The maintenance of the storm sewer of which appellants complain is a governmental function. Consequently, appellee will not be liable for alleged negligence because appellants' property damage does not arise from the operation or use of a motor-driven vehicle or motor-driven equipment. TEX. CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986). Appellee is immune from any negligence related to its maintenance or operation of the storm sewer behind appellants' property.

Appellants also argue that the statutory categories developed by the legislature in section 101.0215(a) of the Texas Civil Practice and Remedies Code do not negate the preexisting common-law definitions or classifications of proprietary functions. However, a review of the legislative history of section 101.0215 as well as the court's decision in *McKinney,* 814 S.W.2d at 865, clearly shows that the legislature intended to clarify which functions would now be considered governmental and which functions would be considered proprietary. Montford & Barber, *supra,* at 121–28. The fact that the legislature reclassified as governmental many functions that previously had

been considered proprietary indicates such an intent for clarity by the legislature. There are only three functions under the Texas Tort Claims Act that are listed as "proprietary," and the area in question in the instant case does not fall within any of those three proprietary functions. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 101.0215(b) (Vernon Supp.1992); *see also* Montford & Barber, *supra*, at 121.

Appellants have cited several cases concerning the classification of drainage easements and storm sewers as proprietary functions. All of the cases, including *Taylor*, 752 S.W.2d at 202, were decided under the previous Texas Tort Claims Act and previous case law when the maintenance of a storm sewer was considered to be a proprietary function. The changes made by the legislature in 1987 to the Texas Tort Claims Act changed the classification of a storm sewer from proprietary to governmental. Montford & Barber, *supra*, at 23. The case of *City of Dallas v. Cox*, 793 S.W.2d 701 (Tex.App.—Dallas 1990, no writ), cited by appellant, applies to section 101.055 of the Texas Civil Practice and Remedies Code, which is not the statutory portion of the Texas Tort Claims Act relevant to the case at bar. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.055 (Vernon Supp. 1992); *Cox*, 793 S.W.2d at 727. Appellants' argument that the courts should look to previous case law to determine whether the storm sewer in question is a governmental or proprietary function is misplaced because of the changes made by the legislature for purposes of tort reform. Therefore, since the actions about which appellants complain concern the maintenance and operation of a storm sewer, a governmental function, their property damage claims are barred as a matter of law because the damage did not arise out of the operation or use of a motor-driven vehicle or motor-driven equipment.

Appellants' negligence claim concerning appellee's approval of upstream development also falls within the governmental functions of a municipality. Appellee's approval of upstream development is specifically mentioned in the Texas Tort Claims Act as a governmental function. TEX.CIV.PRAC. & REM.CODE ANN. § 101.-0215(29), (30) (Vernon Supp.1992) (zoning, planning, plat approval, and engineering). The Texas Supreme Court has held that plat approval and approval of subdivision development are governmental functions. *City of Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex.1985). Therefore, appellants' claims concerning appellee's approval of upstream development, subdivision development, or plats are barred as a matter of law by governmental immunity.

Appellants further argue that they have asserted a claim for mental anguish, which precludes governmental immunity in this case. However, nowhere in their original petition is there any mention of mental anguish. In order for a petition to sufficiently allege a claim for damages, it must provide fair and adequate notice of the facts upon which the pleader's claim is based, and the opposing party must be supplied with information sufficient to enable him to prepare a defense. *Ross v. Texas One Partnership*, 796 S.W.2d 206, 212 (Tex.App.—Dallas 1990), *writ denied per curiam*, 806 S.W.2d 222 (Tex.1991). Appellants did not plead mental anguish. Appellee was under no duty to specially except to the petition as appellants argue.

Appellants further contend that the governmental immunity defense does not apply because they are claiming a personal injury. Appellants, however, failed to plead personal injury and failed to mention any personal injury in their formal notice-of-claim letter dated September 26, 1990. Therefore, any claims by appellants for personal injury are barred as a matter of law.

**THE INVERSE CONDEMNATION ISSUE**

Appellants argue that appellee has taken, damaged, and destroyed their property for public use without exercising the power of eminent domain and without compensating them for their damages by such taking. We disagree.

Texas courts have made it clear that to recover under the theory that prop-

erty has been "taken" under article I, section 17 of the Texas Constitution, the plaintiff must establish that: (1) the State intentionally performed certain acts; (2) which acts resulted in a "taking" of the plaintiff's property; (3) for public use. *City of Abilene v. Smithwick*, 721 S.W.2d 949, 951 (Tex.App.—Eastland 1986, writ ref'd n.r.e.). Texas courts have consistently held that the property damage must not be attributable to negligent acts of the governmental unit in order to maintain an inverse condemnation action. *Ford Motor Co. v. Dallas Power & Light Co.*, 499 F.2d 400, 410 (5th Cir.1974); *Taylor*, 752 S.W.2d at 206; *City of Dallas v. Ludwick*, 620 S.W.2d 630, 632 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

██ Appellants' case centers on appellee's alleged negligence in maintaining and repairing the storm sewer along Heath Creek as well as appellee's approval of upstream development resulting in increased drainage along Heath Creek. Appellants, however, have attempted to label appellee's alleged negligence as a "taking for public use." The erosion on appellants' property was a result of natural rainfall and not due to a conscious decision or an intentional action by a city official. Appellants' allegations amount to nothing more than a claim of negligence on the part of appellee, for which appellee is immune under the Texas Tort Claims Act.

The Texas Supreme Court held that in order to bring a cause of action under inverse condemnation, "the damage must not result from negligence." *Steele v. City of Houston*, 603 S.W.2d 786, 790 (Tex. 1980). In that case, the police intentionally set the plaintiff's house on fire in order to extract several criminals who were taking refuge in the home. *Id.* at 789. The court found that the plaintiff would be allowed to present his inverse condemnation action but would be required to make proof that the City of Houston, acting through its officers with authority or color of authority, intentionally set the house on fire or prevented the fire's extinguishment. The plaintiff was also required to prove that the destruction was done for or applied to

public use. *Id.* at 791–92. Other courts have required more than a negligent destruction of property before finding an unconstitutional taking. *See Taylor*, 752 S.W.2d at 206; *Smithwick*, 721 S.W.2d at 952. Since appellants' action amounts to nothing more than a claim of negligence, their cause of action under inverse condemnation is barred as a matter of law.

**THE TEXAS WATER CODE CLAIM**

██ Appellants argue that appellee has violated section 11.086 of the Texas Water Code by diverting or impounding the natural flow of surface water in a manner that damaged their property. *See* TEX.WATER CODE ANN. § 11.086 (Vernon 1988). The undisputed summary judgment evidence reveals that water has not, in fact, left the banks of Heath Creek and flowed onto appellants' property. Water has caused erosion that has diminished the rear of appellants' property facing Heath Creek. Additionally, Heath Creek has been widened by the erosion to appellants' property.

██ It is undisputed that Heath Creek drains "run off" water only. Surface water is "[t]hat which is defused over the ground from falling rains or melting snows, and continues to be such until it reaches some bed or channel in which water is accustomed to flow." *City of Princeton v. Abbott*, 792 S.W.2d 161, 163 (Tex.App.—Dallas 1990, writ denied) (quoting *Stoner v. City of Dallas*, 392 S.W.2d 910, 912 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.)). Surface waters do not follow a defined course or channel and do not gather into or form a natural body of water. 73 TEX.JUR.3D *Water* § 193, at 340 (1990). When rainfall is under control, either by ditches, tanks, ponds, or pipes, it no longer is considered surface water. *Id.* at 341. The chief characteristic of surface water is its inability to maintain its identity and existence as a body of water, distinguishing it from water flowing in a natural watercourse. 78 AM.JUR.2D *Waters* § 117, at 561 (1975). "[I]f the floodwater forms a continuous body with the water flowing in the ordinary channel, or if it temporarily overflows presently to return, as by reces-

sion of the waters, it is to be regarded as still a part of the stream." *Id.* § 225, at 670.

Heath Creek does not drain "surface water." Appellants have not established by summary judgment evidence that there was an actual overflow of Heath Creek waters onto their land. There was no violation of the Texas Water Code in that there is no evidence of any diverting or impounding of water that caused appellants' backyard to erode.

Heath Creek is a natural waterway, and once rainfall enters Heath Creek, it loses its classification as surface water. Any damage caused by the natural flow of the creek does not constitute a violation of section 11.086 of the Texas Water Code.

The cases cited by appellants in their brief deal with the actual construction of an artificial sewer system and do not apply to the instant case. Surface water loses its identity as surface water when it becomes a part of Heath Creek whereas, in the cases cited by appellants, the surface water remains surface water since it is being diverted by artificial means. Appellants have failed to show that the water causing damage to their property is surface water, and therefore their claim under the Texas Water Code is barred as a matter of law.

## THE ALLEGED FACT ISSUE

Appellants argue that a fact issue exists as to whether actual notice of their claims was received by appellee. Appellants also argue that the issue of actual notice of a claim cannot be decided by summary judgment. They rely on *Alvarado v. City of Lubbock*, 685 S.W.2d 646 (Tex.1985), for the proposition that actual notice is always a fact issue. In *Alvarado,* the court held that actual notice was a fact issue in the case before the court, but that actual notice was not always a fact issue precluding summary judgment. *Alvarado,* 685 S.W.2d at 649. Where summary judgment evidence raises only a mere suspicion or surmise of a fact in issue, there is no genuine issue of material fact sufficient to defeat a summary judgment motion. *Bourne,* 749 S.W.2d at 633; *Vela v. Cam-*

*eron County,* 703 S.W.2d 721, 727 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Consequently, the mere surmise raised by appellants' appearance before the city council on July 18, 1989, does not constitute actual notice of the claim and does not create a fact issue as to whether the notice provision of the city charter or the Texas Tort Claims Act's notice-of-claim requirements were met.

DISPOSITION OF THE APPEAL

We have considered all points of error presented by appellants. They are overruled. The trial court properly rendered summary judgment for appellee. The judgment of the trial court is affirmed.