# Supreme Court of Texas

No. 20-0309

City of Baytown,

*Petitioner,*

v.

Alan Schrock,

*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

**Argued October 27, 2021**

JUSTICE BLAND delivered the opinion of the Court.

JUSTICE YOUNG filed a concurring opinion, in which Justice Lehrmann, Justice Blacklock, and Justice Busby joined.

Our Constitutions require the government to compensate property owners when it takes their property for public use.[1] This

---

[1] The Fifth Amendment to the United States Constitution provides: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. More broadly, the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation." Tex. Const. art I, § 17(a).

constitutional right waives the government's immunity from lawsuits—immunity that otherwise often insulates the public treasury from claims for damages.[2] When government action falls short of a constitutional taking, immunity bars many such claims.[3]

In this dispute over unpaid utility bills, a landlord claims that the city government's wrongful withholding of utility service to collect payment resulted in the loss of a tenant and the eventual disrepair of his property. He claims the city's action is a taking in violation of the Texas or United States Constitution. The trial court found for the city, ruling that the landlord did not establish an intentional taking of private property for public use. The court of appeals reversed, holding that fact issues exist as to whether the city's utility-enforcement actions resulted in a regulatory taking.

Our Court recently rejected a similar proposition in *City of Houston v. Carlson*.[4] Following *Carlson*, we hold that the landlord's challenge to the city's enforcement action fails to show the intentional taking or damage for public use necessary to establish a constitutional right to compensation. Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's directed verdict.

## I

In 1993, Alan Schrock purchased a lot in the City of Baytown for $21,000. He planned to lease out a mobile home on the property to earn

---

[2] *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016).

[3] *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014).

[4] *Id.* at 833.

rental income. At some point, utility bills for the City's water service to the property went unpaid. Until 2011, the City required landlords to either guarantee payment for utility bills or to file a declaration with the City stating that the landlord would not guarantee its tenant's utility payments.[5] The City also had an ordinance prohibiting the connection of new utility service at properties encumbered by outstanding utility bills.[6]

Although Schrock had rented out the property, he did not file a rental declaration with the City until 2009, after the City had assessed Schrock $1,999.67 in past unpaid utility bills. Schrock contested the assessment, and after a hearing, the City reduced the amount he owed to $1,157.39. The City placed a lien in that amount against the property.

In 2010, the City refused to connect utilities to the property when one of Schrock's tenants requested it, which caused the tenant to cancel the lease. The City's refusal to connect service violated Texas Local Government Code section 552.0025.[7] Section 552.0025 prohibits municipalities from conditioning utility service connections on payment

---

[5] Baytown, Tex., Code of Ordinances ch. 98, art. III, § 98-65(i) (1967) (amended 1991). In 2011, the City amended Section 98-65 and repealed the provision requiring a landlord to submit a rental declaration. The amended version now provides that the City shall not impose liens for delinquent charges for services provided to residential renters. Baytown, Tex., Code of Ordinances ch. 98, art. III, § 98-65(d)(4) (2011).

[6] *Id.* § 98-65(g) (1967) (amended 1991).

[7] *See* Tex. Loc. Gov't Code § 552.0025(a) ("A municipality may not require a customer to pay for utility service previously furnished to another customer at the same service connection as a condition of connecting or continuing service.").

3

of outstanding utility bills incurred by other customers residing at the same address.[8]

Later that year, Schrock attempted to tender payment, but the City refused to accept his check. Schrock returned to the City offices to make payment in cash but ultimately refused to pay. In the years that followed, Schrock neither paid the assessment nor attempted to sell or lease the property. It fell into disrepair and was vandalized.

In 2012, Schrock sued the City for inverse condemnation and other claims, primarily alleging that the City's refusal to reconnect his utility service violated section 552.0025 and caused damage to his property. The City filed a plea to the jurisdiction, claiming that it is immune from Schrock's claims. After a lengthy procedural history in state and federal court, only Schrock's regulatory takings claim remained for trial.[9]

During trial, Schrock testified about his attempts to resolve the lien and to the property's deterioration, which he attributed to the City's wrongful refusal to connect utilities to the property. The assistant city manager testified about the City's efforts to collect payment for the outstanding bills.

---

[8] *Id.*

[9] *See Schrock v. City of Baytown*, No. 4:12-cv-02455 (S.D. Tex. Mar. 11, 2013) (dismissing Schrock's federal takings claim, substantive due process claim, and declaratory judgment claim as unripe, finding limitations an alternative ground for dismissal of the declaratory judgment and substantive due process claims, and remanding Schrock's state law inverse condemnation claim and other state law claims); *Schrock v. City of Baytown*, No. 01-13-00618-CV, 2015 WL 8486504 (Tex. App.—Houston [1st Dist.] Dec. 10, 2015, pet. denied) (mem. op.) (remanding regulatory takings claim).

After Schrock rested his case, the trial court directed a verdict for the City, concluding that Schrock had failed to adduce evidence of a taking.

The court of appeals reversed.[10] Relying on the Supreme Court's decision in *Penn Central Transportation Company v. City of New York*,[11] the court concluded that fact issues existed as to whether the City had interfered in bad faith with Schrock's investment-backed expectations, which, in turn, presented some evidence of a regulatory taking.[12] The court of appeals did not address our Court's recent decision in *Carlson*. We granted review.

## II

We review a trial court's grant of directed verdict de novo,[13] using the legal sufficiency standard appellate courts apply to no-evidence summary judgments.[14] A trial court properly grants a directed verdict

---

[10] 623 S.W.3d 394, 425 (Tex. App.—Houston [1st Dist.] 2019).

[11] 438 U.S. 104, 124 (1978). We have described the *Penn Central* factors as: "'(1) the economic impact of the regulation on the claimant'; '(2) the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.'" *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 672 (Tex. 2004) (quoting *Connolly v. Pension Benefits Guar. Corp.*, 475 U.S. 211, 225 (1986)).

[12] 623 S.W.3d at 411, 420.

[13] *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow reasonable jurors to decide otherwise."); *see also JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (noting that de novo review applies to orders deciding questions of law as to which "reasonable minds cannot differ on the outcome," including summary judgments and directed verdicts).

[14] *City of Keller*, 610 S.W.3d at 810.

when no evidence supports a vital fact or the evidence fails to state a claim as a matter of law.[15] We consider the evidence in a light favorable to the party suffering an adverse judgment, crediting all reasonable inferences and disregarding evidence and inferences to the contrary.[16]

A city is immune from suit unless its immunity is waived.[17] Under our constitutions, waiver occurs when the government refuses to acknowledge its intentional taking of private property for public use. A suit based on this waiver is known as an "inverse condemnation" claim.[18] To establish an inverse condemnation claim, a plaintiff must show that the government intended to or was substantially certain that its actions would take or damage the property for public use; otherwise, the doctrine of governmental immunity bars the claim.[19]

## A

The parties dispute whether a claim of economic harm to property resulting from the improper enforcement of a municipal collection ordinance alleges a regulatory taking.

The City contends that Schrock's evidence fails to show that the City took or damaged his property for public use. Relying on *Carlson*, the City argues that the enforcement of municipal ordinances that do

---

[15] *Id.* at 810–11, 814–16.

[16] *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215, 217 (Tex. 2011).

[17] *Carlson*, 451 S.W.3d at 830.

[18] *Id.* An inverse condemnation claim must allege an intentional government act that caused the uncompensated taking of private property. *Id.* at 831.

[19] *Harris Cnty. Flood Control Dist.*, 499 S.W.3d at 799.

6

not themselves regulate property use cannot constitute a regulatory taking, even when such enforcement was improper as a matter of state law. According to the City, the ordinance in this case was not a property-use regulation; instead, the ordinance was a means to collect outstanding bills for utility services provided to the property. Further, the City argues, it did not deprive Schrock of the use of his property, even though it indirectly caused the property to be without utility service and temporarily placed a lien against it.

Schrock responds that the City's improper actions caused a loss in his rental income and a diminution in the property's value even if its collection ordinance is not a land-use regulation. Thus, he argues, the court of appeals correctly applied the *Penn Central* factors to conclude that some evidence of a regulatory taking exists. He alternatively contends that the City's actions constitute either a physical taking or an exaction, entitling him to compensation. Schrock attempts to distinguish *Carlson*, which he suggests involved a flawed administrative process, arguing that in this case, in contrast, the effect of the City's ordinance was so onerous that it constitutes a taking.

## B

The right to own, use, and enjoy one's private property is a fundamental right.[20] When the government takes, damages, or destroys private property for public use, it must provide compensation.[21] The Texas Constitution requires compensation in more circumstances than

---

[20] *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012).

[21] TEX. CONST. art. I, § 17(a).

the United States Constitution—the federal requiring compensation for "taken" property, and the state for "taken, damaged, or destroyed" property—but both provide a means of redress against the government.[22]

A regulatory takings claim is one in which "the plaintiff complains that the government through regulation so burdened his property as to deny him its economic value or unreasonably interfere with its use and enjoyment."[23] Our Court observed in *Carlson* that courts historically have limited regulatory takings claims to those arising directly from land-use restrictions.[24] In that case, the City of Houston ordered several condominium owners to vacate their property because they failed to make mandated repairs.[25] The owners sued, claiming a regulatory taking based on Houston's improper application of its regulations.[26]

In holding that the owners failed to state a regulatory taking, we contrasted between an ordinance that directly regulates land use and

---

[22] *See Steele v. City of Houston*, 603 S.W.2d 786, 789–90 (Tex. 1980) (reviewing history of Texas Constitution's takings clause). Despite the Constitutions' textual differences, the Court typically has evaluated federal and state takings claims using the same analysis. *See, e.g.*, *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935–36 (Tex. 1998) (analyzing plaintiff's state takings claim under federal takings caselaw); *see also Jim Olive Photography v. Univ. of Hous. Sys.*, 624 S.W.3d 764, 780 (Tex. 2021) (Busby, J., concurring) (noting the distinctions). Schrock does not distinguish between the two. Accordingly, we do not differentiate between the two Constitutions for purposes of his appeal.

[23] *Harris Cnty. Flood Control Dist.*, 499 S.W.3d at 800–01.

[24] 451 S.W.3d at 832.

[25] *Id.* at 830.

[26] *Id.* at 832.

8

one that does not—even though it could impair use of the property as a result of its enforcement.[27]  The property owners in *Carlson* failed to show a taking because the repair ordinance there did "not implicate any property-use restriction."[28]

Like Houston's ordinance in *Carlson*, the Baytown ordinance in this case did not regulate land use.  The ordinance permitted the City to refuse to connect utility service to the property until outstanding utility bills associated with the property were satisfied.  The City's provision of utilities to the property was a service; its regulation of that service was not a regulation of the property itself.

As with the claims in *Carlson*, the true nature of Schrock's claim lies in the City's wrongful enforcement of its ordinance, not in an intentional taking or damage of his property for public use.  In *Carlson*, the plaintiffs similarly alleged that Houston wrongfully applied its regulations.  We reiterated there that governments generally are immune from such claims.[29]  Schrock's challenge is no different from the challenge in *Carlson* to the city's alleged misapplication of its building ordinance.[30]  In both cases, the alleged injury arises from a

---

[27] *Id.*

[28] *Id.*

[29] *Id.* at 833 ("Even assuming the city made a mistake, the respondents' allegations would 'amount to nothing more than a claim of negligence on the part of [the city], for which [it] is immune under the Texas Tort Claims Act.'" (quoting *Dalon v. City of DeSoto*, 852 S.W.2d 530, 538 (Tex. App.—Dallas 1992, writ denied))).

[30] Like Schrock, the plaintiffs in *Carlson* claimed a taking based on "the penalty imposed and the manner in which the city enforced its standards."  *Id.* at 832.  We characterized the claim as a colorable due process claim, rejecting

9

municipality's wrongful action unrelated to a taking of private property for public use.

While we do not foreclose the possibility that enforcement of an ordinance that does not directly regulate land use could amount to a taking, this one does not. A regulation with "a condition of use 'so onerous that its effect is tantamount to a direct appropriation or ouster'"[31] may impair a property "so restrictively, or intrude on property rights so extensively, that it effectively 'takes' the property."[32] However, "nearly every civil-enforcement action results in a property loss of some kind."[33] Property damage due to civil enforcement of an ordinance unrelated to land use, standing on its own, is not enough to sustain a regulatory takings claim.

In *Carlson*, the order requiring owners to repair their property was not an interference that was tantamount to ouster.[34] Similarly, the City's lien, which Schrock could have paid or further challenged, was not "so onerous that its effect [was] tantamount to ouster."[35] Instead, it was a conditional restriction. Schrock reasonably could have avoided the

---

the notion that the takings claim arose from the improper enforcement of the ordinance. *Id.* at 832–33. Schrock's allegations are not materially distinguishable from the owners' allegations in *Carlson*.

[31] *Id.* at 831 (citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005)).

[32] *Jim Olive Photography*, 624 S.W.3d at 771–72 (citing *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017)).

[33] *Carlson*, 451 S.W.3d at 832–33.

[34] *Id.* at 832.

[35] *See Lingle*, 544 U.S. at 537.

City's interference with his property by seeking review of the ordinance's improper application and a refund.[36] An enforcement action that causes an economic loss to a property owner but allows for the reversal of that loss is not a constitutional taking.[37] Because the City's enforcement actions against the property were conditional and did not result in permanent ouster, they were not a regulatory taking.[38]

Such is the conclusion under *Penn Central* as well, which answers whether a government's interference with property rights constitutes a regulatory taking by considering: (1) the regulation's economic impact on the property owner; (2) the extent to which the regulation interferes with the property owner's investment-backed expectations; and (3) the character of the government's action.[39] In this case, Schrock could have reversed the City's lien and disruption of utility service through the appeal process or payment. Thus, under *Penn Central*, Schrock did not show that the economic impact of the City's ordinance so interfered with

---

[36] Baytown, Tex., Code of Ordinances ch. 98, art. III, § 98-62(i)(5). The ordinance had an appeals process, in which Schrock participated.

[37] *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 235–36 (Tex. 2011) (holding that police property seizure was not a taking because the procedure permitted owner to regain possession). Thus, "[w]hen there exists provision for compensation—or, as here, for the property's return—a constitutional claim is necessarily premature." *Id.* at 236. The City removed the property lien after Schrock challenged it.

[38] The redemptive right through compliance with the enforcement process differentiates this case from a regulatory taking. *See id.* at 235–37. When return of the property is available, it is a constraint on the government's permanent deprivation of property. *See id.* (observing that takings claims are premature when the owner may apply for the return of his property).

[39] *Sheffield*, 140 S.W.3d at 672.

his property rights that its actions appropriated the property from him.[40]

## C

Finally, Schrock did not present evidence in the trial court of the alternative takings claims he raises in this Court. He did not claim a physical taking. Instead, in the trial court, he claimed that the City's actions denied him all economically viable use of the property and unreasonably interfered with his enjoyment of it. His testimony to the property's eventual state of disrepair was evidence of the degree of the City's alleged interference, not offered to prove that the City physically acquired, occupied, or possessed his property. Schrock also did not raise an exaction claim in the trial court. That is, he did not claim or offer evidence that the City conditioned his right to develop or use his

---

[40] *See Lingle*, 544 U.S. at 537 (defining a regulatory taking as a condition of use "so onerous that its effect is tantamount to a direct appropriation or ouster"). The Supreme Court has limited the examination of the government's purposes to "the severity of the burden that government imposes upon private property rights," rather than an examination of the government's allegedly improper motives. *See id.* at 539; *id.* at 542 (holding that determination of whether government's action properly advances a legitimate interest "is tethered neither to the text of the Takings Clause nor to the basic justification for allowing regulatory actions to be challenged under the Clause"). This is because "the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose." *Id.* at 543. The court of appeals here heavily relied on the City's improper motives to find that Schrock raised a fact issue under *Penn Central*. But the Supreme Court in *Lingle* held that courts must focus on the challenged regulation's effect on private property, not on the propriety of the government's action. Our Court acknowledged this limitation in *VSC*. 347 S.W.3d at 238 (holding that statute's failure to provide for proper notice is a due process challenge, not a takings challenge, because "[t]he Takings Clause guarantees compensation 'in the event of *otherwise proper interference* amounting to a taking'" (quoting *Lingle*, 544 U.S. at 543)).

12

property on granting the City a property interest or upon fulfilling a property improvement condition.[41]  These alternative grounds are not preserved for our review.

*     *     *

We hold that the City's utility enforcement actions do not establish a regulatory taking of private property as a matter of law.  The trial court therefore properly directed a verdict for the City on Schrock's inverse condemnation claim.  We reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

_____<br>
Jane N. Bland<br>
Justice

**OPINION DELIVERED:** May 13, 2022

---

[41] *See Town of Flower Mound v. Stafford Ests. Ltd. P'ship*, 135 S.W.3d 620, 645 (Tex. 2004) (holding that a compensable taking occurred when the town conditioned development approval on the developer's rebuilding and improving of a public street); *see also Dolan v. City of Tigard*, 512 U.S. 374 (1994); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987).